## B. F. KEMP *v.* M. L. PHILLIPS.

*Agistment. Negligence. Burden of Proof on Owner of Cattle.*
*Referees.*

1. Whether an agister of cattle is negligent or acts in a wrongful manner, is purely a question of fact to be found by the jury. or referee.
2. The burden of proof is on the owner of cattle to show wrong and injury done by the agister. The *court will not infer it*, although the agister hampered the colt with a poke, and the colt was afterwards found with a broken leg.
3. The practice by referees of delineating circumstances, and *finding no facts*, is censured.

CASE for negligence in agisting a colt. Heard on the report of a referee, March Term, 1882, VEAZEY, J., presiding. Judgment for the defendant. The declaration alleged, in part:

" And the defendant then and there received said colt from the plaintiff, and agreed with the plaintiff to pasture said colt at the aforesaid rate of thirty cents a week, and then and there promised to and agreed with the plaintiff to notify the plaintiff if and in case said colt was unruly, troublesome, or did not lie quietly in defendant's pasture. And the defendant avers that said colt did not lie quietly in defendant's pasture, but escaped therefrom frequently, and strayed away many times, and that defendant having full knowledge thereof, wholly neglected and omitted to notify the plaintiff as he had agreed and promised to do.   *   *   * And plaintiff avers that defendant treated said colt in a careless, hazardous and improper manner, by fastening upon said colt a heavy and cumbersome poke, and that on account of such neglect and omission to notify plaintiff, and such careless, hazardous and improper treatment, said colt on or about   *   *   *   while in the defendant's possession, as aforesaid, received injuries which caused its death."

The referee found, in part:

" It was also agreed that if the colt was not 'orderly' in the pasture, or was in any way troublesome to defendant, the latter might notify the plaintiff, who was thereupon to take him away.   *   *   *   The pasture was a mountain pasture on Phillips' farm. In some parts it was quite rough. Its general character was known to the plaintiff as well as to the defendant. In the early part of the season some of the line fences were badly out of repair ; this was principally remedied during the season, and does not appear to have been known to Kemp.

" The colt was turned out June third ; there were three other colts in the pasture, one of which was taken out in August. The plaintiff visited the pasture every two or three weeks during the summer, and saw the

defendant from time to time at defendant's house and elsewhere. He was occasionally told by defendant that the colt was doing well, and that he was ' no trouble,' and had no knowledge to the contrary.

" The colts were in the habit of running through the broken fences, and continued occasionally to get out of the pasture into adjoining lots after the fences were repaired. They were several times driven back by neighbors and by defendant's hired men. Plaintiff knew of their being out of defendant's pasture on one or more occasions ; but did not know that they were in the habit of getting out, or that his colt was considered disorderly or troublesome by the defendant, and it does not appear that he was so considered, until an occasion in the latter part of August when plaintiff's colt and another belonging to the defendant escaped from the pasture, got some two or three miles away and were impounded. The defendant then paid the charges and had them brought back to his yard. He did not notify Kemp of this or ask Kemp to take the colt away, but the next morning he had pokes put upon plaintiff's colt and his own, and again turned them into the pasture.

" The plaintiff did not know of the escape or the impounding of his colt, or that a poke was put on it, and did not visit the pasture between that time and the time when the colt was injured as hereinafter stated.

" The pokes were alike and were of ordinary construction, having a wooden bow over the neck of the animal, with a stale about three feet long swinging on a wooden pin passed through the lower ends of the bow and prevented from coming back against the body of the horse by a like pin about six inches above the first one. Only two witnesses were called in respect to the propriety of poking the colt. I find from their testimony, which was not contradicted, that the placing of such a poke upon such a colt in such a pasture is not considered dangerous, and that farmers are accustomed so to poke their own horses, but that they are not accustomed to put pokes upon or 'hamper' horses owned by other persons without the authorization of the owner.

" A few days after the poke was put on plaintiff's colt, it was found standing in the lot of one Hall a few rods from defendant's line fence, and also near the line fence between said Hall and one Butler. The latter was a stone wall, which was thrown down near where the colt was found so that it was a mere heap of stones. The fence between the pastures of Phillips and Hall was also about half way down at a point some four or five rods from where the colt was found. The pastures in that vicinity were not rough. There was no evidence how the colt got from the pasture of the defendant into that of Hall, or that it had been over the broken wall between Phillips and Butler. The bow of the poke was over the neck of the colt, and the stale and lower pin were on the ground a short distance away. A horse wearing shoes stood near by, and such a horse belonged in the pasture of said Butler.

" The right hind leg of plaintiff's colt, when it was found as aforesaid, was broken above the gambrel joint. * * * * It was not proved that the injury was attributable to the wearing of the poke, or that it was not. It was not proved that the placing the poke upon the colt in any way tended to cause the injury, or that it did not so tend. The way in which the accident occurred is wholly a matter of conjecture, as to which there was no evidence either direct or circumstantial which would warrant a finding either way upon the question whether or not there was any connection between the wearing of the poke and the injury to the colt."

*J. C. Baker*, for plaintiff.

The agister is not only responsible for reasonable diligence but for reasonable skill in his business; he must at his peril know what are reasonable precautions against loss or injury to the animals, and take such precautions; ignorance of what is his proper duty is not only no excuse for a failure to discharge it but is negligence, for which the law will punish by holding him responsible. Story Bailm., ss. 442, 444; *Phelps* v. *Parish*, 39 Vt. 511. The contract of agistment imposes the duty upon the agister of restraining the animal. *Sargent* v. *Leach*, 47 Vt. 674; *Smith* v. *Cook*, 15 English, 194. It is a matter of common sense that such a poke as defendant put upon this colt would much increase the danger. *Maynard* v. *Buck*, 100 Mass. 40. The burden of proof is on the defendant to show that the injury was not caused by the poke. *Brown* v. *Waterman*, 10 Cush. 117; 11 Cush. 70; *Bois* v. *R. R. Co.*, 37 Conn. 272; *Logan* v. *Matthews*, 6 Pa. St. 417; *Newton* v. *Pope*, 1 Cow. 109; *McDaniels* v. *Robinson*, 26 Vt. 316; 2 Sedgw. Dama. 151, n. 6; 46 N. Y. 490.

*Ormsbee & Briggs*, for defendant.

Negligence is a question of fact to be found by the referee. *Vinton* v. *Schwab*, 32 Vt. 612; *Maner* v. *Servants*, 10 Reporter, 639. The agister is only bound to use ordinary diligence. Story Bailm. s. 443; Edwards Bailm. ss. 327, 329. The agister is not an insurer; he is responsible merely for ordinary negligence. Story Bailm. 443; Story Con. s. 450. The burden of proof is on the plaintiff to show negligence. *McKay* v. *Irvine*, 13 Reporter, 387, 421; *Del., Lack. & M. R. R.* v *Napheys*, 8 Reporter, 630; Story Bailm. ss. 213, n. 454; Edwards Bailm. s. 172, 399; Story Con. s. 451; *Harris* v. *Packwood*, 3 Taunt. 264; *Littock* v. *Wells, Fargo & Co.*, 109 Mass. 542, 456; *Schmidt* v. *Blood*, 9 Wend. 269; *Harrington* v. *Snider*, 3 Barb. 380; *Maynard* v. *Buck*, 100 Mass. 40.

The opinion of the court was delivered by

REDFIELD, J. The plaintiff placed his colt in the defendant's pasture to be agisted for him. It was afterwards found in the ad-

joining pasture of another owner with a broken leg, and lost to the plaintiff. The action is founded upon the wrongful acts of defendant in agisting the colt. There are no facts in the case but such as appear on the report of the referee. The report is a graceful narrative of the contract of agistment, and incidents in the history of the colt up to the time he ₁was found with its leg broken ; but is naked of all facts tending to show wrong on the part of the defendant. The plaintiff claims that the hampering the colt with a poke without the plaintiff's consent was wrongful. But if this be conceded, the case fails to show that plaintiff has suffered injury from that cause. And it would seem an unnatural and strained inference for a court to infer that the broken leg was caused by the poke. If an inference is to be drawn from the circumstances detailed, it is altogether a matter of fact to be found by the jury or referee, and, in no sense, a matter of law with which the court have to deal.

It is claimed by the plaintiff that the hampering the beast with a poke, without authority from the plaintiff, was so far wrongful that the burden is cast upon the defendant to *negate* any injury from that cause ; but we think, under all the proof in the case, it is incumbent on the plaintiff to prove his case by a fair balance of the testimony. If the beast is proved to have suffered for the want of food, or water, or salt, it shows or tends to show negligence and fault of the agister ; but if the injury complained of in the declaration be a broken leg, and there is no legal or logical connection between the fault proved and the injury averred, and for which damages are sought, the grievance complained of is not sustained, and hence the plaintiff, by his proof, has established no basis for a judgment to requite the injuries he has alleged. There is great mistake, and not an uncommon error, in the report of referees, that they often carefully delineate circumstances and find no *facts*, with the seeming purpose of showing to the parties that they are entirely impartial by casting upon the court the burden of all ugly inferences of *fact*. Whatever be the motive the practice is a bad one.

The result is, that the judgment of the County Court is affirmed.